IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:21CR00030-009 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **LISA F. NEELY,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendant. | ) | |

*Daniel J. Murphy, Assistant United Sates Attorney, Abingdon, Virginia, for United States; Paul G. Beers,* GLENN, FELDMAN, DARBY & GOODLATTE, *Roanoke, Virginia, for Defendant.*

The issues before the court involve the extent of a criminal defendant's evidence at trial of good character and its effect on a prior proffer statement.

I.

The defendant, Lisa F. Neely, is charged in a multi-defendant indictment with conspiring to distribute or possess with intent to distribute 50 grams or more of methamphetamine (Count One); conspiring to commit international money laundering (Count Two); conspiring to obstruct justice (Count Thirteen); and obstructing justice (Count Fourteen). The conspiracies charged in Counts One and Two are alleged to have begun on or about October 1, 2020, and Ms. Neely's obstruction of justice conspiracy and her substantive offense of obstruction are alleged to have occurred on or about January 25, 2021.

Following her indictment, she and her lawyer met with representatives of the government for a proffer session, pursuant to a prior written document entitled, "Agreement Concerning Use of Statements," signed on September 3, 2021, by Ms. Neely and her lawyer, as well as the prosecutor.[1] According to the government, in the ensuing proffer session Ms. Neely,

> provided a detailed account of her involvement in the charged conspiracy and her efforts to influence another co-conspirator to falsely claim that a gun owned and possessed by Desorcy [a leader of the conspiracy and Ms. Neely's romantic partner] was in fact the other co-conspirator's. At the conclusion of her proffer, Neely confessed that she (1) knowingly wired funds to Mexico on two occasions for the purpose of coordinating a shipment of methamphetamine for Desorcy, (2) assisted Desorcy on his trip to Houston to purchase additional methamphetamine by coordinating his travel, hotel, and rental car, and (3) further assisted Desorcy after Desorcy's arrest in January 2021 by coordinating for the delivery of a shipment of methamphetamine from Desorcy's source of supply in Mexico to an address in southwest Virginia she arranged with an unindicted co-conspirator.

Gov't's Mot. in Limine 1–2, ECF No. 352.

---

[1] This written document will be referred to for convenience as the Proffer Agreement. As noted, a

> "proffer agreement" is generally understood to be an agreement between a defendant and the government in a criminal case that sets forth the terms under which the defendant will provide information to the government during an interview, commonly referred to as a "proffer session." The proffer agreement defines the obligations of the parties and is intended to protect the defendant against the use of his or her statements, particularly in those situations in which the defendant has revealed incriminating information and the proffer session does not mature into a plea agreement or other form of cooperation agreement.

*United States v. Lopez*, 219 F.3d 343, 345 n.1 (4th Cir. 2000).

The Proffer Agreement in this case guarantees that no statements or information provided by the defendant "will be admissible against me in the Government's case-in-chief or . . . at sentencing." Proffer Agreement ¶ C, ECF No. 352-1. There is an exception relevant here, which provides that "if I . . . present evidence including, but not limited to, evidence presented through other witnesses at any criminal or civil proceeding[] *that is inconsistent* with a statement I make during this interview session, the Government may use any statements I make and any information I provide for any purpose." *Id.* at ¶ C.1 (emphasis added). "Any purpose" is defined to include "as substantive evidence in any criminal proceeding." *Id.*

The government has filed a Motion in Limine in which it (1) requests the court to exclude at trial the defendant's introduction of "general good moral character" or "history of employment" and (2) if evidence of the defendant's good character is admitted, to allow the government to introduce evidence of the defendant's statements at the proffer session.[2] Gov't's Mot. in Limine 1, ECF No. 352. The defendant has responded, asserting that she should be allowed to present evidence from witnesses that she is an "upstanding community member" who has led a

---

[2] The government also seeks to exclude evidence of an alibi defense, although that does not seem to be an issue in light of the defendant's response and the fact that no notice of such a defense has been yet given. *See* Fed. R. Crim. P. 12.1.

"productive law-abiding life" and a "longstanding propensity for taking part in lawful endeavors," including "steady employment as a registered nurse" in which, among other things, she "assist[ed] patients with their dialysis treatment regimens." Def.'s Mem. in Opp'n 3–4, 7, ECF No. 372. The defendant contends that such evidence would not waive her protection under the Proffer Agreement because it would not be "inconsistent" with her proffer statements. It is argued on her behalf that inconsistency would only exist if specific proffer statements by her were directly denied by her own witnesses. An example given by defense counsel at oral argument was that defense evidence would only be "inconsistent" under the Proffer Agreement if it was admitted that she had wired drugs to Mexico, "but it wasn't for drugs or she had no idea it for drugs."

The government's Motion in Limine has been briefed and orally argued and is ripe for decision.

## II.

Federal Rule of Evidence 404(a)(2) permits a defendant in a criminal case to "offer evidence of the defendant's pertinent trait" of character. However, "[u]nless evidence of character is an essential element of a charge, claim or defense, proof of character is limited to general good character . . . [and] [e]vidence of specific good acts is not admissible." *United States v. Gravely,* 840 F.2d 1156, 1164 (4th Cir.1988) (citation omitted) (upholding exclusion of evidence of defendant's

activities with the March of Dimes). If such evidence of general good character is admissible, it may be proved by testimony by a witness of the defendant's reputation or in the form of an opinion by the character witness. Fed. R. Evid. 405(a). On cross-examination of the character witness, the court may allow "an inquiry into relevant specific instances of the person's conduct." *Id.*

Character is not an essential element of the charges here, and thus any character evidence concerning the defendant will be limited at trial to reputation or opinion evidence by witnesses as to her general good character for law-abidingness.[3] Proof by way of specific past activities or conduct will not be permitted. *See United States v. Piche*, 981 F.2d 706, 713 (4th Cir. 1992) (citing cases).

### III.

The second issue raised by the government's Motion in Limine is whether it may introduce Ms. Neeley's statements made by her in the proffer session in the event that she does present good character evidence for law-abidingness as described above. There is no dispute that Ms. Neely made the statements in her proffer session as attributed to her by the government. Absent the provisions of the Proffer Agreement, the introduction of these admissions by the defendant would clearly be

---

[3] In addition, if the defendant testifies, her credibility may be attacked or supported by opinion or reputation evidence for truthfulness or untruthfulness. Fed. R. Evid. 608(a). However, defense counsel has represented that Ms. Neely "absolutely" will not testify at trial.

proper. The question is whether the introduction of good character evidence about the defendant is "inconsistent" with her proffer statements within the meaning of the Proffer Agreement.

Proffer agreements, like plea agreements, should be considered as contracts and interpreted according to their terms. *United States v. Elshinawy*, No. ELH-16-009, 2018 WL 1521876, at *29 (D. Md. Mar. 28, 2018), *aff'd*, 781 F. App'x 168 (4th Cir. 2019) (unpublished), *cert. denied*, 140 S. Ct. 1221 (2020). "Inconsistent" has been defined as "acting at variance with one's own principles or former conduct[;] not in keeping; discordant; incompatible." Oxford University Press, *Oxford Pocket American Dictionary of Current English* 398 (2002).

In *Elshinawy*, a question was whether the government should have used the defendant's proffer statements at his sentencing. The proffer agreement allowed such use if the defendant used any evidence or argument in his support that was "materially different" from his proffer. 2018 WL 1521876, at *29. Following an examination of the limited case authorities, the court held that the language means that the prohibited use "is likely to contradict or materially differ from a proffer statement when it suggests the existence of a state of facts incongruous with the state of facts indicated in the proffer." *Id.* at 31. I find this construction appropriate.[4]

---

[4] Under the circumstances, I find that "inconsistent" as used here and "materially different" are equivalent terms. *See United States v. Jasin*, 215 F. Supp. 2d 552, 589 (E.D. Penn. 2002). The proffer statements here are clearly material.

The relevant terms of Ms. Neely's Proffer Agreement are not ambiguous and in any event there is no evidence that any different meaning to the exception for inconsistent statements was intended by the parties. For the defendant in this case to offer evidence that she has a law-abiding character would clearly suggest a fact inconsistent with her admitted criminal conduct and thus would allow the government to introduce her proffer statements in rebuttal.

Proffer sessions are common in federal prosecutions, and I recognize that while such sessions may often benefit the accused by persuading the government to withdraw charges or seek reduced penalties, they usually come with significant downsides for the defense if the case goes to trial. But proffer sessions are voluntary, and I do not find it unjust to hold the defendant to her bargain.

IV.

For the reasons stated, the government's Motion in Limine, ECF No. 352, is GRANTED.

ENTER: December 6, 2021

/s/ JAMES P. JONES
Senior United States District Judge